1

2

3

4                        UNITED STATES DISTRICT COURT

5                             DISTRICT OF NEVADA

6                                  * * *

7  TRUSTEES OF THE TEAMSTERS LOCAL        )
   631 SECURITY FUND FOR SOUTHERN         )
8  NEVADA,                                )
                                          )
9                                         )
                         Plaintiffs(s),   )        2:13-cv-00824-GMN-NJK
10                                        )
   vs.                                    )
11                                        )
   DARRELL L BEAVERS, et al.,             )        **REPORT & RECOMMENDATION**
12                                        )
                                          )
13                       Defendant(s).    )
   ───────────────────────────────────── )

14

15         Before the Court is Plaintiffs' Motion for Default Judgment Against Defendants Philip

16  Clough, Kevin S. Gavette, Christopher Schenck, and Shaun E. Upson (Docket No. 40).

17  **I.      BACKGROUND**

18         **A.      Defendant Philip Clough**

19         In 2004, Defendant Clough enrolled for health benefits in the Teamsters Local 631 Security

20  Fund of Southern Nevada (the "Fund") health and welfare Plan (the "Plan"). When he enrolled,

21  Defendant Clough indicated that Gia Clough and Kiera Clough were his children and therefore

22  eligible for benefits under the terms of the Plan. Accordingly, the Fund paid $8,964 in health and

23  welfare payments on behalf of Gia and Kiera Clough.

24         Plaintiffs contend that Defendant Clough later failed to respond to multiple requests from an

25  independent firm hired by the Fund to verify the eligibility of Gia and Kiera Clough. As a result, Gia

26  and Kiera Clough's benefits were suspended and their eligibility was terminated pursuant to the

27  terms of the Plan. Further, under the terms of the Plan, if the Plan pays benefits on behalf of the

28  dependent that is later found not to be eligible for benefits, the participant is required to promptly

1  reimburse the Plan in full. Accordingly, Plaintiffss assert that Defendant Clough must reimburse the

2  Fund for the $8,964 in health and welfare payments made on behalf of Gia and Kiera Clough.

3        **B.      Defendant Kevin S. Gavette**

4        In 2007, Defendant Gavette enrolled in the Plan. When he enrolled, Defendant Gavette

5  indicated that Stephanie Gavette was his spouse and therefore eligible for benefits under the terms

6  of the Plan. Accordingly, the Fund paid $6,734 in health and welfare payments on behalf of

7  Stephanie Gavette.

8        Plaintiff contend that Defendant Gavette later failed to respond to multiple requests from an

9  independent firm hired by the Fund to verify the eligibility of Stephanie Gavette. As a result,

10  Stephanie Gavette's benefits were suspended and her eligibility was terminated pursuant to the terms

11  of the Plan. Further, under the terms of the Plan, if the Plan pays benefits on behalf of the dependent

12  that is later found not to be eligible for benefits, the participant is required to promptly reimburse the

13  Plan in full. Accordingly, Plaintiffss assert that Defendant Gavette must reimburse the Fund for the

14  $6,734 in health and welfare payments made on behalf of Stephanie Gavette.

15        **C.      Defendant Christopher Schenck**

16        Also in 2007, Defendant Schenck enrolled in the Plan. When he enrolled, Defendant Schenck

17  indicated that Stacy F. Schenck was his spouse and that Cody M. Schenck was his child and

18  therefore they were eligible for benefits under the terms of the Plan. Accordingly, the Fund paid

19  $6,153 in health and welfare payments on behalf of Stacy and Cody Schenck.

20        Plaintiff contends that Defendant Schenck later failed to respond to multiple requests from

21  an independent firm hired by the Fund to verify the eligibility of Stacy and Cody Schenck. As a

22  result, Stacy and Cody Schenck's benefits were suspended and their eligibility was terminated

23  pursuant to the terms of the Plan. Further, under the terms of the Plan, if the Plan pays benefits on

24  behalf of the dependent that is later found not to be eligible for benefits, the participant is required

25  to promptly reimburse the Plan in full. Accordingly, Plaintiffss assert that Defendant Schenck must

26  reimburse the Fund for the $6,153 in health and welfare payments made on behalf of Stacy and Cody

27  Schenck.

28  . . .

1       **D.      Defendant Shaun E. Upson**

2              In 2006, Defendant Upson enrolled in the Plan. When he enrolled, Defendant Upson

3       indicated that Jonell M. Upson was his spouse and that Crystal D. Deloera, Aziryah U. Upson, and

4       Shaun E. Upson were his children and therefore they were eligible for benefits under the terms of

5       the Plan. Accordingly, the Fund paid $15,652 in health and welfare payments on behalf of Jonell,

6       Crystal, Aziryah, and Shaun.

7              Plaintiff contends that Defendant Upson later failed to respond to multiple requests from an

8       independent firm hired by the Fund to verify the eligibility of Jonell, Crystal, Aziryah, and Shaun.

9       As a result, Jonell, Crystal, Aziryah, and Shaun's benefits were suspended and their eligibility was

10      terminated pursuant to the terms of the Plan. Further, under the terms of the Plan, if the Plan pays

11      benefits on behalf of the dependent that is later found not to be eligible for benefits, the participant

12      is required to promptly reimburse the Plan in full. Accordingly, Plaintiffss assert that Defendant

13      Upson must reimburse the Fund for the $15,652 in health and welfare payments made on behalf of

14      Jonell, Crystal, Aziryah, and Shaun.

15      **E.      Motion for Default Judgment**

16             On May 10, 2013, Plaintiffs filed a complaint against Defendants Clough, Gavette, Schenck,

17      and Upson (collectively "Defendants"). Docket No. 1.  Thereafter, Plaintiffs made numerous

18      attempts to serve and locate Defendants, but were unsuccessful. *See* Docket Nos. 27 and 28.

19      Accordingly, on September 9, 2013, Plaintiffs moved for service by publication. Docket No. 28. The

20      Court found that Plaintiffs had made a good faith effort to locate and serve Defendants and,

21      accordingly, allowed Plaintiffs to serve Defendants by publication. Docket No. 29. Plaintiffs then

22      served Defendants by publication in the Nevada Legal News, a daily newspaper of general

23      circulation, and, on October 15, 2013, it returned each summons as executed to the Court. Docket

24      No. 34. Defendants were given until November 4, 2013, to answer the complaint. *Id*. To date,

25      Defendants not appeared in this action.

26             On November 5, 2013, Plaintiffs moved for entry of clerks default as to Defendants. Docket

27      No. 36.   The Clerk entered default against Defendants the following day. Docket No. 37.

28      Subsequently, on January 10, 2014, Plaintiffs filed the present motion seeking default judgment

1 │ against Defendants. Docket No. 40.

2 │ **II.      LEGAL STANDARD**

3 │ Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment

4 │ for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

5 │ affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). Federal Rule of

6 │ Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking

7 │ default applies to the clerk of the Court as required by subsection (a) of this rule." Fed.R.Civ.P.

8 │ 55(b)(2).

9 │ On November 6, 2013, the Clerk entered default against Defendants for their failure to plead

10 │ or otherwise defend the instant lawsuit. Docket No. 37.  Pursuant to Federal Rule of Civil Procedure

11 │ 55(b)(2), Plaintiffss now ask this Court to enter default judgment against Defendants.

12 │ The choice as to whether a default judgment should be entered is at the sole discretion of the

13 │ trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default alone

14 │ does not entitle a Plaintiffs to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has

15 │ determined that a court should look at seven discretionary factors before rendering a decision on

16 │ default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors are:

17 │ (1) the possibility of prejudice to the Plaintiffs; (2) the merits of Plaintiffs' substantive claim; (3) the

18 │ sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

19 │ dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the

20 │ strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

21 │ In applying these *Eitel* factors, "the factual allegations of the complaint, except those relating to the

22 │ amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.

23 │ 1977); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). *see also*

24 │ Fed.R.Civ.P. 9(b).

25 │ Plaintiffs are required to prove all damages sought in the complaint, and those damages may

26 │ not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P.

27 │ 54(c). If sufficiently documented and detailed, damages claims may be fixed by an accounting,

28 │ declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993).

1    **III.    DISCUSSION**

2         **A.    Default Judgment**

3         The first *Eitel* factor favors default judgment. Plaintiffs may be prejudiced if the terms of

4    the Plan were not enforced because Defendants obtained the benefits on behalf of the persons they

5    listed as their spouses and children by potentially misrepresenting their dependents' status by failing

6    to verify their eligibility. Further, Plaintiffs have no other recourse to recoup damages caused by

7    Defendants and prevent Defendants from further infringement. *See Adobe Sys. Inc. v. Marmeletos*,

8    2009 WL 1034143 at *3 (N.D.Cal. Apr. 16, 2009). Defendants have not answered or otherwise

9    responded to the complaint. If Plaintiffs' motion for default judgment is not granted, Plaintiffs "will

10   likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 283 F.Supp.2d

11   1127, 1177 (C.D.Cal. 2002).

12        The second and third *Eitel* factors favor a default judgment where the claims are meritorious

13   and the complaint sufficiently states a claim for relief. *See Cal. Security Cans*, 238 F.Supp.2d at

14   1175; *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978)). Plaintiffs' complaint states a

15   plausible claim for relief. *See* Docket No. 1, at 10-11. Further, Plaintiffs' complaint is well pleaded

16   as it identifies Defendants, enumerates Plaintiffs' rights, describes the payments that were mistakenly

17   made due to Defendants' potential misrepresentations and failure to verify eligibility in accordance

18   with the terms of the Plan, and sets forth a proper cause of action for Defendants' conduct. *Id*.

19        Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation

20   to the seriousness of Defendants' conduct. *See Cal. Security Cans*, 238 F.Supp.2d at 1176. The sum

21   in controversy is $8,964 for Defendant Clough, $6,734 for Defendant Gavette, $6,153 for Defendant

22   Schenck, and $15,652 for Defendant Upson, based on each Defendants' potential misrepresentations

23   and failure to follow the terms of the Plan. Thus, this factor favors default judgment.

24        The *fifth* Eitel factor also favors default judgment. Given the sufficiency of the complaint,

25   the terms of the Plan and Defendants' failure to verify the eligibility of their listed spouses and

26   children, "no genuine dispute of material facts would preclude granting [Plaintiffs'] motion." *Cal.*

27   *Security Cans*, 238 F.Supp.2d at 1177. Defendants did not answer the complaint, thus "the factual

28   allegations of the complaint ... will be taken as true." *Geddes*, 559 F.2d at 560.

1    Applying the sixth factor, the court cannot conclude that Defendants' defaults are due to

2  excusable neglect. Defendants were properly served with a summons and the complaint. Docket No.

3  17. Defendants' failure to respond or litigate this case cannot be attributable to excusable neglect.

4  *United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding

5  that it was "perfectly appropriate" for the district court to enter default judgment against a

6  corporation that failed to appear in the action through licensed counsel).

7    The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their

8  merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of Rule 55(b)

9  "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans*, 238 F.Supp.

10  at 1177 (citation omitted). Moreover, Defendants' failure to answer or otherwise respond to the

11  complaint "makes a decision on the merits impractical, if not impossible." *Id*.

12    Having reviewed Plaintiffs' motion and the evidence previously submitted in this case, and

13  having considered the *Eitel* factors as a whole, the Court concludes that the entry of default judgment

14  is appropriate against Defendants. The Court now turns to the reasonableness of the damages and

15  relief sought in the default judgment.

16    **B.    Damages**

17    Once liability is established in a default situation, a Plaintiffs must then establish that the

18  requested relief is appropriate. *Geddes*, 559 F.2d at 560. ERISA explicitly provides for the recovery

19  of unpaid contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees and

20  costs, and other relief deemed appropriate. 29 U.S.C. § 1132(g)(2). Plaintiffs have adequately pled

21  and shown  $8,964 for Defendant Clough, $6,734 for Defendant Gavette, $6,153 for Defendant

22  Schenck, and $15,652 for Defendant Upson in erroneously paid benefits, as well as $7,575 ($1,982

23  for Defendant Clough, $1,967 for Defendant Gavette, $1,959 for Defendant Schenck, and $2,061

24  for Defendant Upson) in attorneys' fees and costs as discussed below. Thus, the total amount of

25  damages is $45,078.

26    **C.    Past Attorneys' Fees and Costs**

27    In this Circuit, the starting point for determining reasonable fees is the calculation of the

28  "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation

1   by a reasonable hourly rate. *See Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). In calculating

2   the lodestar, the Court must determine a reasonable rate and a reasonable number of hours for each

3   attorney. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986), reh'g denied,

4   amended on other grounds, 808 F.2d 1373 (9th Cir.1987).

5        Here, Plaintiffs have requested that the Court find $7,575 in attorneys' fees for 11.6 hours of

6   work at a rate of $160 - $165 per paralegal hour, $270 - $250 per associate hour, and $300 per

7   shareholder hour to be reasonable. *See* Affidavit of Bryce C. Loveland, Docket No. 40-1, at 2 *see*

8   *also* Invoice, Docket No. 40-1, at 10-31. Plaintiffs have assigned a *pro rata* share of the general

9   litigation costs to each Defendant, and have assigned each Defendant the complete attorneys' fees

10  for the work performed specific to them. Thus, Plaintiffs seek a total of $7,575 ($1,982 for

11  Defendant Clough, $1,967 for Defendant Gavette, $1,959 for Defendant Schenck, and $2,061 for

12  Defendant Upson) in past attorneys' fees and costs from Defendants. The Court finds the rate, the

13  time spent, and the *pro rata* determination to be reasonable and recommends that Plaintiffs' past

14  attorneys' fees be awarded in full.

15       **D.    Anticipated Attorneys' Fees and Costs**

16       Plaintiffs state that they "anticipate[] to incur an additional $2,500 in attorney's fees [per

17  Defendant] in executing on the Judgment." Docket No. 40, at 10. Accordingly, Plaintiffs request that

18  the Court enter judgment for the additional $2,500 per Defendant in anticipated costs and fees. *Id*.

19  To support its' request, Plaintiffs cite to 29 U.S.C. § 1132(g)(1) for the proposition that the Court

20  is permitted to allow reasonable attorney's fees in an action brought under § 1132(a)(3).

21       29 U.S.C. § 1132(g)(1) states as follows:

22       In any action under this subchapter (other than an action described in paragraph (2)) by a
     participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable

23       attorney's fee and costs of action to either party.

24       There is no mention of anticipated costs and fees in the statute. Further, Plaintiffs provide

25  no other authority or explanation for why the Court should grant the arbitrary amount of $2,500 per

26  Defendant for anticipated costs and fees as part of judgment. Accordingly, this request should be

27  denied.

28  . . .

1    **IV.    CONCLUSION**

2          Based on the foregoing, and good cause appearing therefore,

3          IT IS THE RECOMMENDATION of the undersigned United States Magistrate Judge that

4    Plaintiffs' Motion for Default Judgment Against Defendants Philip Clough, Kevin S. Gavette,

5    Christopher Schenck, and Shaun E. Upson (Docket No. 40) be GRANTED in part in accordance

6    with this Report and Recommendation.

7          IT IS THE FURTHER RECOMMENDATION of the undersigned United States Magistrate

8    Judge that this Court award Plaintiffs a total of $8,964 in damages and $1,982 in attorneys' fees and

9    costs against Defendant Clough.

10          IT IS THE FURTHER RECOMMENDATION of the undersigned United States Magistrate

11    Judge that this Court award Plaintiffs a total of $6,734 in damages and $1,967 in attorneys' fees and

12    costs against Defendant Gavette.

13          IT IS THE FURTHER RECOMMENDATION of the undersigned United States Magistrate

14    Judge that this Court award Plaintiffs a total of $6,153 in damages and $1,959 in attorneys' fees and

15    costs against Defendant Schenck.

16          IT IS THE FURTHER RECOMMENDATION of the undersigned United States Magistrate

17    Judge that this Court award Plaintiffs a total of $15,652 in damages and $2,061 in attorneys' fees

18    and costs against Defendant Upson.

19          DATED this __6th__ day of February, 2014.

20

21                                          _____
                                            NANCY J. KOPPE
22                                          United States Magistrate Judge

23                                          **NOTICE**

24          Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must
      be in writing and filed with the Clerk of the Court within 14 days of service of this document.**
25    The Supreme Court has held that the courts of appeal may determine that an appeal has been waived
      due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142
26    (1985). This circuit has also held that (1) failure to file objections within the specified time and (2)
      failure to properly address and brief the objectionable issues waives the right to appeal the District
27    Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951
      F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.
28    1983).